## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| HAMILTON PROPERTIES, HAMILTON 1011 LP, HAMILTON PROPERTIES CORPORATION, GO-KAL LLC, and ULYSSES LLLP, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:12-CV-5046-B |
| THE AMERICAN INSURANCE COMPANY, FIREMAN'S FUND INSURANCE COMPANY, ARTHUR J. GALLAGHER, and ALLIANZ GLOBAL RISKS, | § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant The American Insurance Company's Motion for Summary

Judgment (doc. 27). For the reasons that follow Defendant's Motion is **GRANTED**.

## I.

## BACKGROUND[1]

This case arises out of a dispute regarding an insurance company's decision to disclaim

coverage and deny its client's claim for property damage following a hailstorm. Plaintiffs are suing for:

---

[1] The facts are derived from the parties' pleadings, summary judgment briefs, and evidentiary submissions. Unless characterized as a contention by one of the parties, these facts are undisputed. Citations to the two volumes of the Appendix in Support of Defendant The American Insurance Company's Motion for Summary Judgment (docs. 29, 30) are styled as "Def.'s Ex. ___" and include the page number that begins "APP." Citations to the Appendix in Opposition to Defendant's Motion for Summary Judgment (doc. 35) are styled as "Pl.'s Ex. ___" and include the page numbers at the top of the filed document. For example, Pls.' Ex. A is found on pages 4–6 of Plaintiffs' appendix.

(1) breach of contract; (2) violations of the Texas Deceptive Trade Practices Act; (3) violations of the Texas Insurance Code; (4) breach of the duty of good faith and fair dealing; (5) breach of fiduciary duty; (6) misrepresentation; and (7) common law fraud by misrepresentation. Defendant The American Insurance Company ("AIC") has moved for summary judgment with respect to all of these claims.

A.      *Factual Background*

Plaintiffs Hamilton Properties, Hamilton 1011 LP, Hamilton Properties Corporation, Go-Kal LLC, and Ulysses LLLP (collectively "Plaintiffs") are business entities and organizations whose principal place of business is in Dallas, Texas. Orig. Pet. 1–2. In March 2006 Hamilton Properties purchased the Dallas Plaza Hotel (the "Property"). Pls.' Ex. A at 5. The Property is located at 1011 South Akard Street, Dallas, Texas 75215. *Id.*; Orig. Pet. 3. It operated as a fully functioning hotel until February 16, 2009. Pl.'s Ex. A at 5.

1.      The Policy

The Property was originally covered under an umbrella insurance policy through Hamilton Properties' hospitality management company. *Id.* at 6. However, on February 16, 2009 the Property was added to  Hamilton Properties' insurance policy number S 67 MXX 80895731 (the "Policy"), whose coverage ended September 24, 2009. *Id.*; Def.'s Ex. A APP-217–18.

The Policy includes a section entitled Covered Causes of Loss, which indicates that the Policy insures "all risks of direct physical loss or damage, except as excluded or limited elsewhere" in the Coverage Section. Def.'s Ex. A at APP-66. Among the risks *excluded* from coverage are "[w]ear and tear, gradual deterioration, inherent vice, latent defect, depletion, erosion, corrosion, mold, wet or dry rot" and "[s]ettling, cracking, shrinkage, bulging, or expansion of pavements, foundations, walls,

floors, roofs, or ceilings." *Id.* at APP-68–69.

In the event of a Covered Cause of Loss, the Policy indicates that the insured must give "prompt notice of the loss or damage." *Id.* at APP-82. In addition, the insured must provide "a description of how, when and where loss or damage occurred" as soon as possible, and "[t]ake all reasonable steps to protect the Covered Property from further damaged by a Covered Cause of Loss." *Id.*

<u>2.</u>    <u>The July Hailstorm</u>

On July 8, 2009 there was a hailstorm (the "July Hailstorm") in Dallas, Texas. According to Tom Coughlin, who was living at the Property and serving as its caretaker at the time, ping-pong-sized hailstones rained down. Defs.' Ex. E at APP-301. Within a month of the July Hailstorm, Coughlin started to notice a pattern of falling ceiling tiles and water dripping on the 12th floor of the Property. Defs.' Ex. E APP-305–07. "[P]robably after a week or two had gone by but before a couple months" after the storm Coughlin notified a manager for Hamilton Properties, Ashley Farha, of the problems he observed. *Id.* at APP-307; Defs.' Ex. K at APP-408. However, it was not until later that Larry Hamilton, corporate representative of Hamilton Properties, became aware of the water and ceiling issues.[2] Defs.' Ex. D at APP-276–77.

<u>3.</u>    <u>Claim and Denial</u>

The parties disagree when Plaintiffs notified AIC of the wind and hail damage from the July Hailstorm. Plaintiffs insist they provided notice on February 14, 2011, when Larry Hamilton emailed Plaintiffs' insurance agent about the loss. Pls.' Resp. 16 (citing Pls.' Ex. K); *see also* Def.'s Ex. D at

---

[2] There is evidence that Larry Hamilton discovered the damage in September 2009 while inspecting the building for vandalism damage on the first floor. Def.'s Ex. C. at APP-257.

APP-272. AIC insists this did not count as notice because the agent was no longer Plaintiffs' broker of record and could not accept or report the claim on their behalf. Def.'s Br. 10; Def.'s Ex. D at APP-274. Thus, AIC argues Plaintiffs did not give notice until their claim was filed in October 2011—roughly eight months after Larry Hamilton's email. Def.'s Br. 10–11; Pl.'s' Ex. B at APP-251; Defs.' Ex. G at APP-352.

On February 16, 2012, Defendants notified Hamilton Properties via letter (the "Denial Letter") that AIC investigated the claim and decided to disclaim coverage. Defs.' Ex. C at APP-257–61. The Denial Letter stated that an engineer previously inspected the Property on July 27, 2009—nineteen days after the July Hailstorm—and noted no obvious hail or water damage at the time. *Id.* at APP-257. In addition, AIC's roof consultant advised that the roof was about twelve to fifteen years old, that he saw no evidence of hail damage to its surface, and that the worst interior damage was over an area previously patched. *Id.* at APP-258. The Denial Letter also noted that AIC reviewed historical weather data for the area and confirmed that inch-sized hail was reported on the date of the July Hailstorm. *Id.* Further, there were three prior hail events between April 2007 and February 2008 that produced hail between 0.88 and 1.75 inches. *Id.* There also three hail events after the July Hailstorm during May 2011 that produced hail between 0.75 and 1.5 inches. *Id.* Ultimately, because Plaintiffs did not notice the damage until 2011, AIC could not determine if the damage occurred during the coverage period, which ended on September 24, 2009. *Id.* at APP-260. Consequently, AIC disclaimed the coverage and made no payment for the claim. *Id.* at APP-259.

B.   *Procedural Background*

Plaintiffs filed suit in the 192nd-K District Court of Dallas County, Texas, on October 15, 2012. Doc. 1-1. Defendants removed the matter to this Court on December 10, 2012. Doc. 1. On

February 3, 2014, Defendant The American Insurance Company filed the present Motion for Summary Judgment (doc. 27). Plaintiffs responded (doc. 33) on March 10, 2014, and Defendant replied (doc. 40) on March 24, 2014. Defendant's Motion is ripe for the Court's review.

## II.

## LEGAL STANDARD

A.    *Summary Judgment*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that, as a matter of law, the movant is entitled to judgment. *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). In a motion for summary judgment, the burden is on the movant to prove that no genuine issue of material fact exists. *Provident Life & Accident Ins. C. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). To determine whether a genuine issue exists for trial, the Court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 371–72 (5th Cir. 2002).

When the party with the burden of proof is the movant, it must establish each element of its claim as a matter of law. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). If the non-movant bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). Rather, the movant may satisfy its burden by pointing to the absence of evidence to support the non-movant's case. *Id.*; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

- 5 -

Once the movant has met its burden, the non-movant must show that summary judgment is not appropriate. *Little*, 37, F.3d at 1075 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "This burden is not satisfied with some metaphysical doubt as to material facts, . . . by conclusory allegations, . . . by unsubstantiated assertions, or by only a scintilla of evidence." *Id.* (internal citations and quotations omitted). The non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original) (quoting Fed. R. Civ. P. 56(e)).

The district court does not have a duty to search the entire record to find evidence supporting the non-movant's opposition. *Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). Rather, the non-movant must "identify specific evidence in the record, and [] articulate the 'precise manner' in which that evidence support[s] [her] claim." *Bookman v. Shubzda*, 945 F. Supp. 999, 1004 (N.D. Tex. 1996) (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

## III.

## ANALYSIS

AIC moves for summary judgment with respect to all of Plaintiffs' claims. In particular, AIC avers that Plaintiffs cannot establish the causation element of any of their causes of action. In addition, AIC highlights deficiencies particular to each of Plaintiffs' claims. The Court reviews AIC's arguments and the claims in turn below.

A.    *Breach of Contract*

The Court first considers Plaintiffs' breach of contract claim. Under Texas law, "[t]he elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance

tendered by the plaintiff; (3) breach of the contract by defendant; and (4) damages to the plaintiff resulting from that breach." *Wright v. Christian & Smith*, 950 S.W.2d 411, 412 (Tex. App.—Houston [1st Dist.] 1997, no pet.). "[F]or an insurance company to be liable for a breach of its duty to satisfy a claim presented by its insured, the insured must prove that its claim falls within the insuring agreement of the policy." *Data Specialties, Inc. v. Transcontinental Inc. Co.*, 125 F.3d 909, 911 (5th Cir. 1997).

AIC offers several reasons why Plaintiffs' breach of contract claim must fail. First, AIC argues that Plaintiffs cannot establish that the Property suffered a covered loss because they have no evidence to allocate damages between the July Hailstorm and other excluded factors. Def.'s Br. 6–8. Next, AIC argues that Plaintiffs failed to provide prompt notice of the alleged damage, as was required under the Policy, and thereby relieved AIC of any obligation under the contract. *Id.* at 9–11. Finally, AIC argues that Plaintiffs' delay in filing notice of the loss prejudiced its ability to investigate the claim. *Id.* at 11.

Not surprisingly, Plaintiffs argue that summary judgment is inappropriate. As an initial matter, they refute the claim that they cannot attribute the Property's damage to a covered loss. Pls.' Resp. 6. Indeed, they maintain eyewitness and expert testimony show that the damage was solely attributable to the July Hailstorm. *Id.* at 13. For support, they point to the resident caretaker Tom Coughlin's discovery of "new and distinct" damage directly beneath the roof area where hail damage occurred. *Id.* at 14. In addition, Plaintiffs note that owners of neighboring properties submitted affidavits regarding the severity of the storm and the large size of the hail stones. *Id.* Plaintiffs also rely on their purported expert, Tom Shingler, who inspected the Property in 2013 and determined that the July Hailstorm ruptured the waterproofing skin of the roof's cant and created flow paths for water

into the Property that led to damage to the interior of the 12th floor.[3] *Id.* at 15. Regarding AIC's argument that it was excused from performing under the contract, Plaintiffs insist that notice was given promptly—indeed, eight months sooner than AIC alleges. *Id.* at 16. Plaintiffs also argue that AIC was in no way precluded from properly investigating the matter, as evidenced by testimony that adjustor Paul Blanchard was able to take the steps necessary to investigate. *Id.* at 17. Accordingly, Plaintiffs insist summary judgment should be denied. The Court considers the parties' arguments below.

1.    Covered Loss

"An insured cannot recover under an insurance policy unless facts are pleaded and proved showing that damages are covered by his policy." *Employers Cas. Co. v. Block*, 744 S.W.2d 940, 944 (Tex. 1988), *overruled in part on other grounds by State Farm Fire & Cas. v. Gandy*, 925 S.W.2d 696 (Tex. 1996). To be sure, this does not mean that an insured cannot recover where he suffers damage from both covered and non-covered perils. However, "[w]hen covered and excluded perils combine to cause an injury, the insured must present some evidence affording the jury a reasonable basis on which to allocate the damage." *Lyons v. Miller Cas. Ins. Co.*, 866 S.W.2d 597, 601 (Tex. 1993). "Failure to provide evidence upon which a jury or court can allocate damages between those that resulted from covered perils and those that did not is fatal to an insured party's claim." *Nat'l Union Fire Ins. v. Puget Plastics Corp.*, 735 F. Supp. 2d 650, 669 (S.D. Tex. 2010).

---

[3] The Court recognizes that Defendant has objected to Mr. Shingler's testimony and moved to strike it under Federal Rule of Evidence 702. Doc.41. Defendant has similarly objected to other evidence from Plaintiffs' experts. *See* docs. 44, 47, 49, 51. The Court will overlook the alleged infirmities of Plaintiffs' evidence because, as shown within the Court's analysis, even if properly submitted, the evidence is insufficient to support a reasonable jury finding in favor of Plaintiffs' claims.

Plaintiffs insist that damage to the Property was solely caused by the July Hailstorm. Pls.' Resp. 13. In support, they direct the Court to several exhibits—the affidavits of Douglas Caudill (Pls.' Ex. E), Paul Cook (Pls.' Exs. F, G), and Tom Shingler (Pls.' Ex. J); the deposition of Tom Coughlin (Pls.' Ex. D); and the expert report of Tom Shingler (Pls.' Ex. I). AIC disagrees and insists that Plaintiffs cannot establish that the July Hailstorm caused their property damage. Def.'s Br. 6–8. Specifically, AIC alleges Plaintiffs have no evidence to apportion damage between the July Hailstorm and other excluded factors, including a storm beyond the coverage period and normal wear and tear. *Id.*

After reviewing the evidence in the light most favorable to Plaintiffs, the Court concludes that AIC has satisfied its burden of showing the lack of evidence to support Plaintiffs' claim that the damage to the Property was solely caused by the July Hailstorm. For example, the affidavits of Douglas Caudill and Paul Cook show that the July Hailstorm was significant, caused damage to the roofs of neighboring buildings, and was stronger than a prior hailstorm in the area. Pls.' Ex. E at 56 ("The damage was substantial leading to replacement of the entire roof as well as HVAC units of the Griffin Street Studios."); Pls.' F at 59 ("My roof was a total loss and the insurance company settled for an undisputed amount to cover the damage."); Pls.' Ex. G. However, the affidavits are silent with respect to the condition of Plaintiffs' hotel either before or after the storm. Thus, these exhibits do little more than support a point that is not in dispute—that the July Hailstorm could have damaged the Property. Whether the storm actually did—and to what extent—remains unclear.

Similarly, the testimony of Plaintiffs' eye-witness Tom Coughlin and the testimony, affidavit, and expert report of Plaintiffs' expert Tom Shingler do not demonstrate that Plaintiffs' damage was "solely attributable to the hail storm." Pls.' Resp. 13. Indeed, when taken in the light most favorable

to Plaintiffs, the evidence from both men shows only that the July Hailstorm contributed to the destruction of the roof and interior of the Property. However, it does not establish Plaintiffs' claim that the July Hailstorm was the lone cause of the harm. Nor does the evidence raise a genuine question of material fact on this point.

For example, Mr. Coughlin testified that before the storm he never noticed leaking on the 12th floor. Pls.' Ex. D at 49. Sometime thereafter—"after [the] beginning of July 2009"—he observed water dripping from the ceiling.[4] *Id.* at 51–52. Indeed, "if it was raining outside, [Mr. Coughlin] would for all intents and purposes, see leakage. Sometimes a day or two after it rained, it would still be continuing to leak." *Id.* at 52. Over time, the water damage became so bad that ceiling tiles started to fall. *Id.* Certainly Mr. Coughlin's observations indicate that the 12th floor deteriorated after the July Hailstorm. However, they fail to demonstrate what Plaintiffs allege—that the change was entirely the result of the event. *See* Pls.' Resp. 13. Mr. Coughlin never clarified when before (or after) the storm he visited the 12th floor or what its condition was during his initial visit.[5] *See* Pls.'

---

[4] It is unclear from the deposition excerpts provided to the Court if Mr. Coughlin visited the 12th floor the same day or several days after the July Hailstorm. Def.'s Ex. E at APP-313 (Q: "When you first noticed -- on the 12th floor when you first noticed that day or two or after July 8, 2009 or the day itself, were pretty much all the ceiling tiles still in place?" A: "Yes."); *id.* at APP-314 (Q: "Did you, after that day, have occasion to once again go to the 12th floor of The Dallas Plaza Hotel?" A: "Yes.").

[5] Per the deposition of Mr. Coughlin:

| | |
|---|---|
| Q: | Prior to July of 2009, had you been on the 12th floor of The Dallas Plaza Hotel? |
| A: | Yes. |
| Q: | While you were there, had you ever seen the ceiling areas of that floor? |
| A: | I'm sure I did without looking intentionally, but, you know, I'm sure I did. |
| Q: | During that time period, did you notice any significant leaking? |
| A: | No, I didn't notice any. |
| Q: | Did you notice any leaking at all? |
| A: | No. |

Pls.' Ex. D at 49.

Ex. D at 49. In addition, Plaintiffs' expert Tom Shingler testified that it could take anywhere from days to months after holes form in the roof and walls for water to be noticeable inside the Property. *See* Def's. Ex. H at APP-367–72. Mr. Shingler also acknowledged that two previous hailstorms, one of which pre-dated the Policy's coverage period, could have caused the hail damage that allowed water to penetrate the 12th floor.[6] *Id.* at APP-372. Further, he conceded that a pre-existing crack in a patch on the roof, which he attributed to shrinkage and suggested a "lack of quality in the maintenance," could have been a source of the water intrusion. Def.'s Ex. H. at APP-361–64 ("I mean this looks like shrinkage of the tar.").

To be sure, Mr. Shingler did conclude that the July Hailstorm damaged the waterproofing skin of the cant and created paths for water to flow inside the Property, and that the ceiling on the 12th floor was damaged underneath the observed weaknesses on the roof. Pls.' Ex. I at 71. However, Mr. Shingler admitted that he did not believe the damage he observed inside the building in 2013 existed as of August 2009 because "[i] takes time for what [he] saw." Def.'s Ex. H at APP-373. Instead, he explained "the process [of damage] *initiated* with the [July Hail]storm." *Id.* (emphasis

---

[6] Per the deposition of Mr. Shingler:

> Q: Okay. And if you look back at Exhibit 9, you'll see that there was storm on June 11, 2009 that had hailstones that were just slightly smaller, correct?
>
> A: Yes.
>
> Q: And if we go back to February 2009, you have hailstones that are exactly the same size, correct?
>
> A: Yes.
>
> Q: Okay. So with that data in hand and the hypothetical that Mr. Coughlin has testified that he observed water coming in that very same day.
>
> A: Uh-huh.
>
> Q: Can you rule out that it was one of these storms earlier in 2009—
>
> A: No.

Def.'s Ex. H at APP-372, 377.

added). This view is consistent with Plaintiffs' own Exhibit H, a 2009 Fireman's Fund Roof Survey, that states the roof "was in decent conditions but showing signs of wear" as of July 27, 2009—less than three weeks after the July Hailstorm. Pls.' Ex. H at 64–65.

Far from establishing their claim that the storm was the sole cause of their loss, Plaintiffs' evidence reinforces AIC's point that other causes could have contributed to the damage. What's more, AIC has adduced evidence to suggest that the damage to Plaintiffs' roof and interior could have been the result of non-covered perils, such as a hailstorm from February 10, 2009 or lack of maintenance. Regarding the latter, AIC highlights Mr. Shingler's testimony regarding the crack on the roof as well as the deposition testimony of Larry Hamilton, who indicated Hamilton Properties did nothing to maintain the roof before making its present claim for damage. Def.'s Ex. D at APP-269–270 (Q: "Prior to making this claim, is there anything that Hamilton Properties was doing to maintain the roof of this hotel?" A: "There was -- we were doing what we were required to do which was nothing."). As neither a prior storm nor lack of maintenance is covered by the Policy, the burden has shifted to Plaintiffs to provide "evidence to allow the trier of fact to segregate covered losses from non-covered losses." *Feiss v. State Farm Lloyds*, 392 F.3d 802, 807 (5th Cir. 2004); *see also Atwill v. State Farm Lloyds*, No. 304CV1343–K, 2006 WL 1118155, at *2 (N.D. Tex. April 27, 2006) ("Because Defendant provided competent summary judgment evidence that a non-covered source could also have caused the damage, Plaintiff had the burden of establishing evidence to allow the jury to segregate covered losses from non-covered losses.").

Based on the analysis above, the Court concludes Plaintiffs have failed to sustain their burden of establishing evidence to allow a jury to allocate damages between the July Hailstorm and non-covered perils. Though Mr. Shingler refutes the charge that he cannot attribute specific damage to

the storm,[7] neither he nor Plaintiffs point to anything that would allow a jury to reasonably distinguish between the damage that was caused by the July Hailstorm and the damage caused by other admitted, potential sources. *See* Pls.' Ex. I at 74. Indeed, both rely on Mr. Coughlin's account of the damage as well as Mr. Shingler's inspection, though, for the reasons already discussed, this evidence neither establishes the July Hailstorm as the sole cause or distinguishes the damage it caused from other non-covered perils. This is fatal to Plaintiffs' claim. "Although a plaintiff is not required to establish the amount of his damages with mathematical precision, there must be some reasonable basis upon which the jury's finding rests." *Wallis v. U.S. Auto Ass'n*, 2 S.W.3d 300, 304 (Tex. App.—San Antonio 1999, review denied) (citing *Oyster Creek Fin. Corp. v. Richwood Investments, II, Inc.*, 957 S.W.2d 640, 649 (Tex. App.—Amarillo 1997, pet. denied)). Further, a non-movant cannot defeat summary judgment simply with unsubstantiated assertions or conclusory allegations. *See Matsushita*, 475 U.S. at 587.

In sum, AIC has illustrated that Plaintiffs lack evidence to support their claim that the damage for which they seek to recover was entirely due to the July Hailstorm, and Plaintiffs have failed to raise a genuine issue of material fact on this point. AIC has also demonstrated that other, non-covered perils could have contributed to Plaintiffs' loss. However, Plaintiffs have failed to make a showing sufficient to establish that they can allocate damages between the July Hailstorm and these other risks. As a result, the Court concludes that AIC is entitled to summary judgment on Plaintiff's breach of contract claim. *See Watson v. Allstate Texas Lloyd's*, 224 F. App'x  335, 338 (5th Cir.

---

[7] As Mr. Shingler writes in his Affidavit: "Specifically, my firsthand inspection of the Dallas Plaza Hotel, taken with the eyewitness account of Tom Coughlin, allows me to discuss certain damages in my report, as directly relating to the July 8, 2009 event that is subject of this litigation." Pls.' Ex. J at 74.

2007) ("Summary judgment is appropriate if a party who bears the burden of proof fails to make a showing sufficient to establish the existence of an element essential to the party's case." (internal quotation marks omitted)).

2.    Prompt Notice and Prejudice

Though the Court's previous conclusion disposes of Plaintiffs' claim, the Court nevertheless considers AIC's argument with respect to notice. AIC asserts that prompt notice was a condition precedent to the Policy and that Plaintiffs failed to satisfy the condition by waiting until October 2011 to file their claim. Def.'s Mot. 9. As a result, AIC argues it was relieved of any of its own duties under the contract. *Id.* Not surprisingly, Plaintiffs reject this argument. They insist notice was given promptly in February 2011, and they deny that AIC was excused of its duties under the Policy. Pls.' Resp. 15–16.

As an initial matter, the Court considers AIC's characterization of the Policy's notice provision as a "condition precedent" to be of no moment.[8] First, "[c]onditions are not favored in the law." *PAJ, Inc.*, 243 S.W.3d at 636. Second, Courts have traditionally distinguished between two types of insurance policies: "occurrence" policies and "claims-made" policies. *Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.*, 174 F.3d 653, 658 (5th Cir. 1999). "An 'occurrence' policy covers the insured for acts or omissions that occur within the policy, regardless of whether the claim is

---

[8] AIC relies on *Watson v. Allstate Texas Lloyds Insurance Co.*, No. H–03–5805, 2005 WL 1607452, at *3 (S.D. Tex. July 5, 2005), to support the proposition that a notice provision is a condition precedent. *Watson*, in turn, relied on a 1987 Texas Supreme Court case involving an accident insurance policy. *See id.* (citing *Am. Teachers Life Ins. Co. v. Brugette*, 728 S.W.2d 763, 764 (Tex. 1987)). Though the Court has no reason to doubt *Watson*'s analysis, it respectfully declines to follow its guidance on this matter in light of the more recent Fifth Circuit authority discussing a property insurance policy like the one at issue. *See Ridglea Estate Condominium Ass'n v. Lexington Ins. Co.*, 415 F.3d 474, 479 (5th Cir. 2005); *see also PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630, 634 (Tex. 2008) ("Since our decision in *Hernandez*, courts and several major treatises have acknowledged Texas as a state that has adopted a notice-prejudice rule.").

brought to the attention of the insured or made known to the insurer during the policy period." *Id.* at 658 n.2 (internal quotation marks and alterations omitted). A "claims-made" policy, on the other hand, "covers the insured only for claims made during the policy period regardless of when the covered act or omission occurred." *Id.* (internal quotations marks and alterations omitted). Though neither party identifies it as such, the Policy at issue here appears to be an "occurrence" policy. *See* Def.'s Ex. A. at APP-66 (coverage extends "provided such loss or damage *occurs during the term of this polic*y")(emphasis added). As such, "any notice requirement is subsidiary to the event that triggers coverage." *Matador*, 174 F.3d at 658. In other words, the "timely notice provision" is not considered an essential part of the bargained-for exchange. *See, e.g., PAJ, Inc.*, 243 S.W.3d at 636. Consequently, "Texas law requires a showing of prejudice in order to raise breach of a notice requirement as a defense against claims" like the one in the present case.[9] *Ridglea*, 415 F.3d at 479; *see also PAJ*, 243 S.W.3d at 635–36 ("Nevertheless we made no distinction between ["condition precedent" and "covenant"] in deciding that the insurer had to show prejudice before it could avoid its coverage obligation."). Accordingly, to determine whether AIC is entitled to summary judgment on this ground, the Court shall focus on whether Plaintiffs gave prompt notice and, if not, whether AIC was prejudiced as a result.

Regarding the first issue, the parties dispute whether Plaintiffs gave notice in February or

---

[9] Though this "prejudice requirement" does not extend to *all* insurance policies, the Fifth Circuit has applied it in a case similar to the one at bar. Indeed, the *Ridglea* court held that, notwithstanding a property owner's failure to file an insurance claim for roof damage six years after the fact, the insurance company was required to show prejudice in order to raise the breach of prompt notice defense. *Id.* at 480. In arriving at this conclusion, the Court relied on the Texas Supreme Court's reasoning that "'[i]nsurance policies are contracts' and thus subject to the 'fundamental principle of contract law . . . that when one party to a contract commits a material breach . . . the other party is discharged . . . from any obligation to perform." *Id.* (quoting *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994)). Since *Ridglea*, the Texas Supreme Court has reinforced the view that the state has adopted a "notice-prejudice rule." *See PAJ, Inc.*, 243 S.W.3d at 634.

October 2011. Plaintiffs point to correspondence from AIC to Hamilton Properties' public adjustor, Darrin Snuggs, that acknowledges an email Mr. Hamilton sent to his insurance agent advising him of the loss on February 14, 2011. Pls.' Resp. 16 (citing Pls.' Ex. K); *see also* Def.'s Ex. C at APP-257. AIC dismisses this email as a "failed attempt to give notice" because Plaintiffs received a response that the agent was no longer their broker of record and could not accept or report the claim on their behalf. Def.'s Br. 10; Def.'s Ex. D at APP-274. Thus, AIC argues Plaintiffs did not give notice until their claim was filed in October 2011—roughly eight months later. Def.'s Br. 10–11.

Neither of the parties has indicated whether the Policy specifies when property damage "occurs" for purposes of giving prompt notice. Though previous courts have stated that damage occurs when it becomes "manifest," which is to say "capable of being easily perceived, recognized, and understood," recent authority calls this into question. *See Flores v. Allstate Texas Lloyd's Co.*, 278 F. Supp. 2d 810, 816 (S.D. Tex. 2003) (citing *Am. Home Assur. Co. v. Unitramp Ltd.*, 146 F.3d 311, 314 (5th Cir. 1998), *implied overruling recognized by*, *OneBeacon Ins. Co. v. Don's Bldg. Supply, Inc.*, 553 F.3d 901, 902 (5th Cir. 2008) (per curiam) ("*OneBeacon II*")). In 2007, the Fifth Circuit certified two unresolved questions to the Texas Supreme Court, the first of which is apropos here: "When not specified by the relevant policy, what is the proper rule under Texas law for determining the time at which property damage occurs for purposes of an occurrence-based general liability insurance policy?" *OneBeacon Ins. Co. v. Don's Bldg. Supply, Inc.*, 496 F.3d 361, 365 (5th Cir. 2007) ("*OneBeacon I*"). In response, the Supreme Court of Texas held that the property damage occurred when actual physical damage to the property occurred. *OneBeacon II*, 553 F.3d at 902 (citing *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 24 (Tex. 2008). In arriving at its conclusion, the court pointed out that the policy in question defined property damage as "'[p]hysical injury to tangible

property'" and explicitly stated that "coverage is available if and only if 'property damage' occurs during the policy period." *Don's Bldg. Supply,* 267 S.W.3d at 24 (alteration in original). Thus, "[t]he date the physical damage is or could have been discovered is irrelevant under the policy." *Id.*

The Court is unaware of a definition for "property damage" within the Policy here at issue. However, the Policy does make clear that the coverage extends to "all risks of physical loss or damage, except as excluded or limited elsewhere . . . , provided such loss or damage *occurs during the term of this policy.*" Def.'s Ex. A at APP-66 (emphasis added). In light of the previously discussed authority and the Policy's clear emphasis on the coverage period rather than any subsequent discovery, the Court concludes that the alleged damage occurred on July 8, 2009—the undisputed date of the July Hailstorm. Accordingly, without resolving when "proper" notice was given, the Court determines that Plaintiffs waited anywhere from nineteen to twenty-seven months after the storm before contacting Defendant about their property damage. This was not prompt as a matter of law. *See, e.g., Salinas v. Allstate Texas Lloyd's Co.*, 278 F. Supp. 2d 820, 825 (S.D. Tex. 2003) (failure to provide notice and make repairs for over a year before notifying insurer not prompt or reasonable as a matter of law); *Flores*, 278 F. Supp. 2d at 820 (failure to notify insurer of claim for mold damage for six months not "prompt" as matter of law). Plaintiffs' insistence that Mr. Hamilton gave notice "as soon as he reasonably realized that a covered claim may exist" does not excuse this. Pl's Resp. 16; *Don's Bldg. Supply*, 267 S.W.3d at 24 ("The date the physical damage is or could have been discovered is irrelevant under the policy."). Thus, the Court agrees with AIC that Plaintiffs breached their obligation under the Policy. However, the question remains whether the breach was material—that is, whether AIC suffered prejudice as a result.

AIC insists that it was indeed prejudiced by Plaintiffs' untimely notice. It argues that

Plaintiffs' delay deprived it of the "opportunity to investigate the loss site in temporal proximity to the events at issue" and denied it access to "critical evidence." Def.'s Br. 11–12. For example, "AIC could not document the condition of the roof immediately following the July 8, 2009 event and determine whether the roof exhibited any indicia of recent hail damage or whether the leaking observed by Coughlin might have resulted from other events or conditions." *Id.* at 12. Similarly, AIC claims it lost the opportunity to quantify the damage in proximity to the date of loss or to interview the other residents of the hotel who may have known the prior condition of the roof and impact of the event. *Id.* In other words, Plaintiffs' delay "deprived AIC of an important opportunity to conduct its own investigation of the circumstances surrounding Plaintiffs' claim such that it could fairly determine whether the event causing the loss occurred during the limited time that AIC insured the property and, if so, the extent of the damage at that point in time." *Id.* at 13.

Plaintiffs reject these assertions and argue that AIC was not precluded from investigating their claim properly. In support, they highlight the testimony of AIC employee Paul Blanchard, who confirmed that AIC was able to take the steps necessary to evaluate Plaintiffs' claim. Pls.' Resp. 17. They also point to the testimony of Mr. Blanchard's superior, Chris Wooden. *Id.* When asked if he claimed AIC's rights were prejudiced in this case, Mr. Wooden replied no. *Id.*; Pls.' Ex. L. Given these statements, Plaintiffs insist summary judgment is not proper.

"When an insurer must prove it was prejudiced by the insured's failure to comply with the notice provisions, the recognized purposes of the notice requirements form the boundaries of the insurer's argument that it was prejudiced; a showing of prejudice generally requires a showing that one of the recognized purposes has been impaired." *Blanton v. Vesta Lloyds Ins. Co.*, 185 S.W.3d 607, 615 (Tex. App.—Dallas 2006, no pet.) (internal quotation marks omitted)). "The purpose of the

timely notice requirement is to enable an insurer to investigate the circumstances of an accident while the matter is fresh in the minds of the witness so that it may adequately prepare to adjust or defend any claims . . . ." *Id.* at 611–12. Thus, "prejudice from failure to notify timely arises from inability to investigate the circumstances of an occurrence to prepare adequately to adjust or defend any claims, not merely to prepare for trial." *Id.* at 615. However "an insurer must offer 'more than the mere fact that it cannot employ its normal procedures in investigating and evaluating the claim.'" *Trumble Steel Erectors, Inc. v. Moss*, 304 F. App'x 236, 244 (5th Cir. 2008) (per curiam) (quoting *Transportes Ferreos de Venezuela II CA v. NKK Corp.*, 239 F.3d 555, 561 (3d Cir. 2001) (internal quotation marks omitted)). The insurer must show it was prejudiced "in some tangible way." *Berkley Regional Ins. Co. v. Philadelphia Indem. Ins. Co.*, 690 F.3d 342, 349 (5th Cir. 2012). Though the existence of prejudice is generally a question of fact, the court may decide the issue on summary judgment "if the undisputed facts establish prejudice sufficient to relieve an insurer of its obligations." *St. Paul Guardian Ins. Co. v. Centrum G.S. Ltd.*, 383 F. Supp. 2d 891, 902 (N.D. Tex. 2003).

Construing the facts in the light most favorable to Plaintiffs, the Court concludes that AIC has demonstrated that it was prejudiced by Plaintiffs' untimely notice. Mr. Coughlin testified that the ceiling on the 12th floor deteriorated considerably in the weeks and months after the July Hailstorm. In addition, Plaintiffs' expert conceded that the July Hailstorm only initiated—rather than caused—the damage he observed in August 2013. He also stated the roof exhibited signs of damage from a variety of sources. All this indicates that the condition of the roof and 12th floor changed considerably over the nineteen to twenty-seven months before Plaintiffs gave notice. What's more, there is no indication that Plaintiffs attempted to mitigate the damage or document the changes in the interim. Surely this limited AIC's ability to determine whether and to what extent

the July Hailstorm damaged the Property. Thus, the Court concludes that Plaintiffs' lapse in providing notice compromised the reliability and availability of evidence necessary to investigate their claim. In other words, the Court determines that AIC suffered an adverse change in position as a result of Plaintiffs' delay. *See Trumble Steel Erectors, Inc.*, 304 F. App'x at 236.

The testimony of AIC's two witnesses does not change this. Plaintiffs make much of the fact that adjustor Paul Blanchard stated that AIC was able to take the steps necessary to properly investigate the claim—namely, review expert reports about the condition of the Property; view the Property; and speak with the insured's representative. Pls.' Resp. 17; Pls.' Ex. B. In addition, Plaintiffs rely on Chris Wooden's statement that he was not claiming AIC's rights had been prejudiced in the case. Pls.' Resp. 17; Pls.' Ex. L at 84. However, neither of these responses precludes a finding of prejudice. Regarding Mr. Blanchard's testimony, the ability to conduct the investigation does not necessarily speak to the investigation's quality. *See Blanton*, 185 S.W.3d at 615 ("prejudice from failure to notify timely arises from inability to investigate the circumstances of an occurrence to prepare *adequately* to adjust or defend any claims") (emphasis added). Further, both Mr. Blanchard and Plaintiffs' counsel acknowledged the importance of viewing the Property firsthand and speaking to witnesses who were present during the storm. Pls.' Ex. B at 20–21, 24. Yet, because of Plaintiffs' delayed notice, AIC did not investigate the Property until long after the event. *See* Pls.' Ex. K. In addition, Mr. Coughlin did not provide his affidavit until June 2012, and Mr. Hamilton was unable to provide the whereabouts of the other hotel residents who may have also witnessed or recorded the damage. Def.'s Ex. E at APP-310; Pls.' Ex. B at 36; Def.'s Ex. D at APP-283. Thus, it can hardly be said that Mr. Blanchard was able to conduct the steps of his evaluation while information was still "fresh" or even available. *See Blanton*, 185 S.W.3d at 611.

With respect to Mr. Wooden's deposition, AIC is correct to point out that Mr. Wooden was not designated a 30(b)(6) witness. *See* Fed. R. Civ. P. 30(b)(6). His opinions were therefore his own and not intended to be the "position" of AIC. *C.f. Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006) ("Thus, a rule 30(b)(6) designee does not give his personal opinions, but presents the corporation's 'position' on the topic."); *id.* Furthermore, his statement that AIC's rights were not prejudiced because there was no damage is a conditional statement of limited utility to the present inquiry. Prejudice is a legal conclusion reserved for the fact-finder based upon consideration of many things, not simply the existence of "damage." Mr. Wooden's testimony does not raise a question regarding AIC's ability to investigate Plaintiffs' insurance claim. Consequently, it is not enough to defeat AIC's Motion on this point.

For the foregoing reasons, the Court concludes that AIC is entitled to summary judgment on Plaintiffs' breach of contract claim. Accordingly, AIC's Motion is **GRANTED.**

B.     *Non-Contractual Claims*

The Court next turns to Plaintiffs' non-contractual claims: (1) violations of the Texas Deceptive Trade Practices Act ("DTPA"), Tex. Bus. & Com. Code §§ 17.46, 17.50; (2) violations of the Texas Insurance Code, Tex. Ins. Code §§ 541.060–61, 542.058; (3) breach of the duty of good faith and fair dealing; (4) breach of fiduciary duty; (5) misrepresentation; and (6) common law fraud by misrepresentation.

1.     Texas Deceptive Trade Practices Act; Section 541 of the Texas Insurance Code; Duty of Good Faith and Fair Dealing

"Liability under § 541 of the Texas Insurance Code and under the Texas Deceptive Trade Practices Act includes the same standard as a common-law bad faith claim." *Blum's Furniture Co. v.*

*Certain Underwriters at Lloyds London*, No. H–09–3479, 2011 WL 819491, at *4 (S.D. Tex. Mar. 2, 2011) (citing *Texas Mut. Ins. Co. v. Sara Care Child Care Ctr., Inc.*, 324 S.W.3d 305, 317 (Tex. App.—El Paso 2010, review denied)). Generally "there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered." *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995). However, an exception may exist when, in denying the claim, the insurer commits an act "so extreme that it would cause injury independent of the policy claim." *Watson,* 2005 WL 1607452, at *5.

Plaintiffs allege AIC's conduct falls within this possible exception because Paul Blanchard disregarded the affidavits of Douglas Caudill and Paul Cook during the claims review process. Pls.' Resp. 21. In addition, they claim Mr. Blanchard did not review the deposition testimony of Tom Coughlin prior to denying the claim. *Id.* In addition, they allege AIC adopted a "manufactured approach to claims-handling" by emailing an engineer who had inspected the Property in July 2009 to confirm that the condition of the roof at the time was different than during the present investigation. *Id.* at 19; Pls.' Ex. M ("I am inspecting the loss on Tuesday, 10/25 at about 2:00 p.m. If you can make it, it would be great to have you there to confirm the damage present now was not present when you saw it in 2009."). AIC denies that this conduct was "extreme" and argues that Plaintiff has presented no evidence of an independent injury from these acts. Def.'s Reply 13–14. Consequently, AIC insists the claims must fail.

Without addressing whether AIC's conduct rises to the level of being "extreme," the Court concludes that Plaintiffs' claims cannot survive. As AIC correctly notes, Plaintiffs have failed to allege or provide summary judgment evidence to raise a genuine issue of fact that they suffered an injury independent of their policy claim. Accordingly, Plaintiffs cannot, as a matter of law, maintain

their statutory or common law bad faith claims *See MacIntire v. Armed Forces Benefit Ass'n*, 27 S.W.3d 85, 92 (Tex. App.—San Antonio 2000, no pet.); *see also Republic Ins. Co.*, 903 S.W.2d at 341. As such, AIC's Motion for Summary Judgment with respect to Plaintiffs' claims for violations of Chapter 541 of the Texas Insurance Code, the DPTA, and the duty of good faith and fair dealing is **GRANTED**.

> 2.   Section 542 of the Texas Insurance Code

The Court next considers Plaintiffs' claim that AIC violated Section 542 of the Texas Insurance Code, also known as the Texas Prompt Payment of Claims Act. Tex. Ins. Code § 542.058. "[T]o maintain a claim for delay of payment under the Texas Insurance Code, an insured must establish that: (1) a claim exists under an insurance policy; (2) the insurer is liable for the claim; and (3) the insurer failed to comply with the Texas Insurance Code." *Church on the Rock North v. Church Mut. Ins., Co.*, No. 3:10–CV–0975–L, 2013 WL 497879, at *11 (N.D. Tex. Feb. 11, 2013) (citing *Allstate Ins. Co. v. Bonner*, 51 S.W.3d 289, 291 (Tex. 2001)). In light of the Court's conclusion that AIC is not liable for Plaintiffs' claim under the Policy, Plaintiffs cannot establish all of the elements of this cause of action. Accordingly, AIC's Motion regarding Section 542 of the Texas Insurance Code is **GRANTED**.

> 3.   Fiduciary Duty

The Court next considers Plaintiffs' claim for breach of fiduciary duty. Plaintiffs allege that Defendants had a fiduciary relationship, or in the alternative, a relationship of trust and confidence with Plaintiffs. Orig. Pet. 12. They claim AIC breached this duty by, *inter alia*, not placing the interests of Plaintiffs before their own and not fully and fairly disclosing all important information to Plaintiffs concerning the Policy. *Id.* AIC maintains Plaintiffs have neither pleaded nor proved a

special relationship between the parties that justifies imposing the duties of a fiduciary relationship on AIC. Def.'s Br. 18. Accordingly, AIC insists it is entitled to summary judgment on this claim.

Texas recognizes two types of fiduciary relationships, formal and informal. *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007). A formal fiduciary relationship "'arises as a matter of law and includes the relationship between attorney and client, principal and agent, partners and joint venturers.'" *Id.* (quoting *Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 508 (Tex. App.—Houston [1st Dist.] 2003, no pet.)). An informal fiduciary relationship or "confidential relationship" "may arise where one person trusts in and relies upon another, whether the relationship is a moral, social, domestic, or purely personal one." *Smith v. Deneve*, 285 S.W.3d 904, 911 (Tex. App.—Dallas 2009, no pet.); *Navigant Consulting, Inc.*, 508 F.3d at 283 (internal quotation marks omitted). As Texas courts have made clear, a "fiduciary relationship is an extraordinary one and will not be created lightly. *Smith*, 285 S.W.3d at 911. Further, "[t]he mere fact that one party to a relationship subjectively trusts the other does not indicate the existence of a fiduciary relationship." *Id.*

As an initial matter, the Court notes "[i]n Texas, it is clear that there is no general fiduciary duty between an insurer and its insured." *Meritage Corp. v. Clarendon Nat'l Ins. Co.*, No. 3:03–CV–1439, 2004 WL 2254215, at *8 (N.D. Tex. Oct. 6, 2004). Furthermore, "[f]ederal courts that have applied Texas law to such a relationship have also not found a fiduciary obligation." *Id.* (citing *In re Segerstrom*, 247 F.3d 218, 227 n.7 (5th Cir. 2001) (concluding "Texas does not recognize a fiduciary duty between insurers and their insureds, only a duty of reasonable care")). Thus, for Plaintiffs to withstand AIC's Motion they must raise a genuine issue of material fact that an informal fiduciary relationship existed between the parties. After reviewing evidence in the light most

- 24 -

favorable to Plaintiffs, the Court concludes that Plaintiffs have not carried this burden. Indeed, the

facts and evidence before the Court nowhere indicate Plaintiffs were "accustomed to being guided

by the judgment and advice of" AIC. *Pabich v. Kellar*, 71 S.W.3d 500, 505 (Tex. App.—Fort Worth

2002, review denied). If anything, the parties seem to have entered into an arms-length transaction

for mutual benefit; there is nothing to suggest that either agreed to put the other's interests ahead

of its own. Accordingly, the Court concludes that Plaintiffs have failed to provide any basis for the

Court to infer a fiduciary relationship existed. As a result, AIC's Motion is **GRANTED.**

> ### 4.   Negligent Misrepresentation; Intentional Misrepresentation; Common Law Fraud by Misrepresentation

Finally, the Court considers Plaintiffs' various but overlapping claims for misrepresentation.

Plaintiffs allege that Defendants are liable for intentional misrepresentation, or in the alternative,

negligent misrepresentation because, "[e]ssentially, Defendants did not inform Plaintiffs of certain

exclusions in the policy." Orig. Pet. 14. They further allege Defendants "perpetrated fraud by

misrepresentation (either intentionally or negligently) by falsely representing a fact of materiality to

Plaintiffs," and that "Defendants fraudulently concealed material facts from Plaintiffs." *Id.* In

response, AIC argues Plaintiffs have failed to adduce evidence of an actionable misrepresentation

or that Plaintiffs relied on any representation to their detriment. Def.'s Br. 16. AIC further insists

Plaintiffs have failed to plead or prove any injury independent of the subject matter of the insurance

contract. *Id.*

Negligent misrepresentation has the following elements:

> (1) the representation is made by a defendant in the course of his
> business, or in a transaction in which he has a pecuniary interest; (2)
> the defendant supplies 'false information' for the guidance of others
> in their business; (3) the defendant did not exercise reasonable care

- 25 -

or competence in obtaining or communicating the information; and
(4) the plaintiff suffers pecuniary loss by justifiably relying on the
representation.

*Barrand, Inc. v. Whataburger, Inc.*, 214 S.W.3d 122, 140 n.5 (Tex. App.—Corpus Christi 2006, pet.

denied) (citing *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 4424 (Tex. 1991)). Intentional

misrepresentation, on the other hand, "is essentially fraud." *Id.* In Texas, the elements of fraud are:

> (1) that a material representation was made; (2) that it was false; (3)
> that, when the speaker made it, he knew it was false or made it
> recklessly without any knowledge of its truth and as a positive
> assertion; (4) that he made it with the intention that it should be
> acted upon by the party; (5) that the party acted in justifiable reliance
> upon it; and (6) that he thereby suffered injury.

*Id.* (citing *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983)).

Regarding non-disclosures, "non-disclosures cannot be negligent unless there is a duty to

disclose."[10] *Coburn Supply Co., Inc. v. Kohler Co.*, 342 F.3d 372, 377 (5th Cir. 2003). Further, fraud

by non-disclosure requires a showing that:

> (1) the defendant failed to disclose facts to the plaintiff; (2) the
> defendant had a duty to disclose those facts; (3) the facts were
> material; (4) the defendant knew the plaintiff was ignorant of the
> facts and the plaintiffs did not have an equal opportunity to discover
> the facts: (5) the defendant was deliberately silent when it had a duty
> to speak; (6) by failing to disclose the facts, the defendant intended
> to induce the plaintiff to take some action or refrain from acting; (7)
> the plaintiff relied on the defendant's non-disclosure; and (8) the

---

[10] A duty to disclose may arise in four situations under Texas law:
> (1) when there is a confidential or fiduciary relationship; (2) when one
> voluntarily discloses information, he has a duty to disclose the whole truth;
> (3) when one makes a representation, he has a duty to disclose new
> information when he is aware the new information makes clear the earlier
> representation misleading or untrue; and (4) when one makes a partial
> disclosure and conveys a false impression, he has a duty to speak.

*Highland Crusader Offshore Partners, L.P. v. LifeCare Holdings, Inc.*, No. 3:08–CV–0102–B, 2008 WL
3925272, at *12 (N.D. Tex. Aug. 27, 2008) (internal quotations omitted).

plaintiff was injured as a result of acting without that knowledge.

*Douglass v. Beakley*, 900 F. Supp. 2d 736, 750 (N.D. Tex. 2012)(internal citations omitted).

Finally, "[s]tate law fraud claims are subject to the heightened pleading requirements of Rule 9(b)." *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550–51 (5th Cir. 2001); Fed. R. Civ. P. 9(b). The Fifth Circuit "interprets Rule 9(b) strictly, requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Hermann Holdings Ltd. v. Lucent Techs., Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002)(citations and internal quotations omitted). In other words, "Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010)(quoting (*Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)).

After reviewing all the evidence in the light most favorable to Plaintiffs, it is clear that AIC has sustained its burden of establishing the absence of evidence to support any of Plaintiffs' claims involving misrepresentation or fraud. What's more, Plaintiffs have failed to address these claims beyond their initial pleading and have fallen well short of raising a genuine issue of material fact on these points. Nowhere have Plaintiffs identified speakers or statements on which they relied. To the extent they base their claims on omitted information, they have similarly failed to identify any duty AIC had to disclose. Consequently, the Court concludes AIC's Motion should be **GRANTED**.

## IV.

## CONCLUSION

For the foregoing reasons Defendant's Motion is **GRANTED** in its entirety**.** Plaintiffs' claims are **DISMISSED WITH PREJUDICE**.

SO ORDERED.

SIGNED: July 7, 2014.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE